## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MRJP, LLC | ) | |
| | ) | Case No.  13-43573-pjs |
| | ) | |
| Debtor. | ) | Hon. Phillip J. Shefferly |
| _____ | / | |

### DEBTOR'S COMBINED PLAN OF REORGANIZATION
### AND DISCLOSURE STATEMENT

PREPARED BY:

**HARRINGTON DRAGICH PLLC**

/s/ David G. Dragich
David G. Dragich (P63234)
Amanda C. Vintevoghel (P76567)
21043 Mack Avenue
Grosse Pointe Woods, MI, 48236
(313) 886-4550 (Telephone)
ddragich@harringtondragich.com
avintevoghel@harringtondragich.com

**THE DEBTOR EXPRESSLY RESERVES ITS RIGHT TO AMEND THIS COMBINED PLAN AND DISCLOSURE STATEMENT.  THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS NOT A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SOLICITATION BY THE DEBTOR OF ANY PLAN IN THIS CHAPTER 11 CASE WILL COMPLY WITH ALL PROVISIONS OF THE BANKRUPTCY CODE. ALL EXHIBITS REFERENCED IN THIS PLAN AND DISCLOSURE STATEMENT NOT FILED CONTEMPORANEOUSLY HEREWITH WILL BE FILED WITH THE BANKRUPTCY COURT NO LATER THAN JULY 23, 2013.**

## I.     PLAN OF REORGANIZATION

### ARTICLE I

### DEFINITIONS, RULES OF
### INTERPRETATION AND COMPUTATION OF TIME

1.1     **Scope of Definitions.**

For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings ascribed to them in <u>section 1.2</u> of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.2     **Definitions.**

1.2.1   "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the Petition Date, Professional Claims, all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c) of the Bankruptcy Code, provided, however, that this term shall not include any portion of Allowed Secured Claims, whether or not all or part of Allowed Secured Claim is entitled to priority under sections 503(b), 507, 363, or 364 of the Bankruptcy Code, or otherwise.

1.2.2   "**Administrative Claims Bar Date**" means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to (a) Professional Claims, which shall be subject to the provisions of <u>Article IV</u> of this Plan and (b) Claims asserted under section 503(b)(9) of the Bankruptcy Code, which Claims are subject to the Bar Date and the Bar Date Order.

1.2.3   "**Allowed**" means when used in reference to a Claim or Interest, within a particular Class, an Allowed Claim of the type described in such Class.

1.2.4   "**Allowed Claim**" means a Claim, or any portion thereof,

a.      that has been Allowed by a Final Order of the Bankruptcy Court (or such other court or forum with jurisdiction to adjudicate such Claim and objections thereto);

b.      as to which a Proof of Claim has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that such Claim is identified in such Proof of Claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been Filed within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied or overruled by a Final Order;

c.      as to which no Proof of Claim has been Filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or disputed, but solely to the extent of such liquidated amount and (ii) no objection to its allowance has been Filed by the Debtor or the Reorganized Debtor, within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court; or

d.      that is expressly Allowed in a liquidated amount in this Plan.

1.2.5  "**Avoidance Claims**" means Causes of Action or defenses arising under any of sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such Causes of Action.

1.2.6  "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date.

1.2.7  "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, or such other court as may have jurisdiction over the Chapter 11 Case.

1.2.8  "**Bankruptcy Rules**" means the Federal Rule of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

1.2.9  "**Bar Date**" means the deadlines set, or to be set, by the Bankruptcy Court pursuant for filing proofs of claim in the Chapter 11 Case.

1.2.10  "**Bar Date Order**" means an order entered, or to be entered, by the Bankruptcy Court establishing the Bar Date, and any subsequent order supplementing such initial order or relating thereto.

1.2.11 "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in the City of Detroit.

1.2.12 "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.2.13 "**Causes of Action**" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by the Debtor or the Reorganized Debtor to the extent such Cause of Action is a Cause of Action held by the Debtor or the Reorganized Debtor.

1.2.14 "**Chapter 11 Case**" means the chapter 11 case of the Debtor pending in the Bankruptcy Court under Case No. 11-63532.

1.2.15 "**Claim**" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.2.16 "**Claims Register**" means the official register of Claims.

1.2.17 "**Class**" means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.18 "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Case.

1.2.19 "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.2.20 "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.21 "**Creditor**" means any creditor of a Debtor as defined in section 101(10) of the Bankruptcy Code.

1.2.22 "**Cure**" means the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law: (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and

4

assignment) of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such lesser amount as may be agreed upon by the parties, under such executor contract or unexpired lease.

1.2.23 "**Debtor**" means, MRJP, LLC.

1.2.24 "**Disallowed Claim**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.2.25 "**Disclosure Statement**" means the written disclosure statement (including all schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

1.2.26 "**Disputed**" means with respect to any Claim, any Claim on the Claims Register that is not yet Allowed.

1.2.27 "**Distribution Date**" means the last day of the month after the Effective Date occurs.

1.2.28 "**Effective Date**" means the first Business Day after the Confirmation Order becomes a Final Order.

1.2.29 "**Entity**" has the meaning set forth at section 101(15) of the Bankruptcy Code.

1.2.30 "**Estate**" means the bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code.

1.2.31 "**Exhibit**" means an exhibit annexed either to this Plan or as an exhibit to the Disclosure Statement. If the Plan or Disclosure Statement references a numbered exhibit and one is not attached, but is subsequently filed; or if the Plan or Disclosure Statement does not reference a numbered exhibit and a numbered exhibit is attached thereto; than such numbered exhibit shall be incorporated with and into the Plan or Disclosure Statement, as applicable, as though such numbered exhibit were filed therewith.

1.2.32 "**File**" means to file with the Bankruptcy Court in the Chapter 11 Case, or such other court with jurisdiction over the relevant subject matter.

5

1.2.33 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.34 "**Final Order**" means an order of judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed from which certiorari was sought or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

1.2.35 "**General Unsecured Claim**" means any Claim that is not otherwise an Administrative Claim, Priority Tax Claim, or Secured Claim.

1.2.36 "**Governmental Unit**" has the meaning set forth at section 101(27) of the Bankruptcy Code.

1.2.37 "**Holder**" means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.38 "**Impaired**" refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2.39 "**Interest Holder**" means the stockholders of the Debtor as of the Petition Date.

1.2.40 "**Lien**" has the meaning set forth at section 101(37) of the Bankruptcy Code.

1.2.41 "**Local Rules**" means the Local Rules of the Bankruptcy Court, as may be modified or amended.

1.2.42 "**Michigan Commerce**" means Michigan Commerce Bank.

1.2.43 "**Michigan Commerce Debt**" means the debt assigned to Michigan Commerce arising under a secured commercial financing arrangement pursuant to two notes (collectively, the "Notes"). The Notes are secured by two security agreements. The first a security agreement granted to Michigan Commerce a lien and blanket security interest in all MRJP's business assets ("Security Agreement 1"). The second security agreement granted Michigan Commerce a lien with respect to Citizens Bank Assignment of Promissory Note, Collateral and Loan Documents ("Security Agreement 2") (collectively, the "Security Agreements").

6

1.2.44 "**New Value**" means such money or money's worth that has or will be paid or contributed by the Interest Holders for the new stock of the Reorganized Debtor.

1.2.45 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

1.2.46 "**Petition Date**" means February 27, 2013, the date the Debtor Filed its petition for reorganization relief in the Bankruptcy Court.

1.2.47 "**Plan**" means this joint plan of reorganization for the resolution of outstanding Claims and Interests in the Chapter 11 Case, as herein proposed by the Debtor, including all Exhibits, supplements, appendices, and schedules hereto, either in its or their present form or as the same may be further altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.2.48 "**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

1.2.49 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.2.50 "**Proof of Claim**" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

1.2.51 "**Professional**" means any Person retained in the Chapter 11 Case by Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise.

1.2.52 "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred related to services rendered or expenses incurred after the Petition Date and prior to and including the Effective Date.

1.2.53 "**Properties**" means all of the real property owned by the Debtor located in Washtenaw County.

      1.2.53.1      "**Ann Arbor Property**" means the property located at 4000 Washtenaw Avenue, Ann Arbor, Washtenaw County, Michigan 48108.

      1.2.53.2      "**Dexter Property**" means the property located at 6100 Dexter-Pickney Road, Dexter, Washtenaw County, Michigan 48130.

      1.2.53.3      "**Saline Property**" means the property located at 6139 Saline Ann Arbor Road, Saline, Washtenaw County, Michigan, 48176.

7

1.2.54 "**Reorganized Debtor**" means MRJP, LLC from and after the Effective Date.

1.2.55 "**Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

1.2.56 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed in the Chapter 11 Case by the Debtor, which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Debtor's schedules and statements, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.2.57 "**Unimpaired**" means, with respect to a Claim, any Claim that is not Impaired.

1.3     **RULES OF INTERPRETATION**. For purposes of this Disclosure Statement and Plan, unless otherwise provided therein:

1.3.1    Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

1.3.2    Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter.

1.3.3    Any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified, or supplemented.

1.3.4    Any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns.

1.3.5    All references in this Plan to sections, articles, and Exhibits are references to sections, articles, and Exhibits of or to this Plan, unless otherwise stated.

1.3.6    The words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan.

1.3.7    Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan.

1.3.8    Subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this

Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

      1.3.9   The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

      1.4   **Computation of Time**.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

      1.5   **Reference to Monetary Figures**. All reference in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

      1.6   **Exhibits**. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be Filed with the Bankruptcy Court. Upon its Filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

**ARTICLE II**

**ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS**

      For the purposes of approval and implementation of this Plan and the resultant reorganization of the Debtor, Administrative Claims and Priority Claims shall be paid on account of their Allowed Claims in accordance with the provisions set forth below:

      2.1   **Group 1:**         **Administrative Expense Claims**

      2.1.1 This group consists of Allowed Administrative Claims.  The potential administrative claims at the time of confirmation will be in favor of Harrington Dragich PLLC ("Harrington Dragich"), attorneys for the Debtor, Taylor & Morgan as certified public accountant to the Debtor, any other Professionals retained by the Debtor and quarterly fees for the United States Trustee.  Administrative claims of Professionals and other parties are current through the filing of the Plan and have been paid pursuant to the Cash Collateral Budget submitted by the Debtor and approved by Michigan Commerce.  To the extent Professionals have been paid pursuant to the Cash Collateral Budget, all such fees and expenses are subject to the filing and approval of final fee applications by the Bankruptcy Court.

      2.1.2 As of the Petition Date, Corrigan Oil asserted an administrative expense claim in the amount of $31,666, pursuant to *Final Order Authorizing Use of Cash Collateral and Providing Adequate Protection* [Docket No. 36].  Since April 8, 2013, the Debtor has been making weekly payments to Corrigan Oil in the amount of $879.61 and will continue to do so until Corrigan Oil's administrative claim is paid in full.

9

2.1.3 Subject to the provisions of this Plan, as soon as reasonably practicable after the date when an Administrative Claim becomes an Allowed Administrative Claim or the date when an Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the Holder of such Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim or such other treatment that the Debtor (or the Reorganized Debtor) and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

2.2     **Group 2:      Priority Tax Claims.**

2.2.1   Based upon the scheduled Claims, this group consists of Priority Tax Claims that are entitled to priority under 11 U.S.C. § 507(a)(8), including a claim in the amount of $114,800.50 related to property taxes asserted by the Washtenaw County Treasurer; $7,983.89 related to personal property taxed asserted by Lodi Township; $8,273.03 related to sales tax asserted by the State of Michigan; and $718.95 related to personal property taxes asserted by Dexter Township. All such Priority Tax Claims remain subject to review of the Debtor pursuant to this Plan.

2.2.2   Allowed Priority Tax Claims shall be paid in equal quarterly payments until such claims are paid in full.  Any taxes relating to the Ann Arbor Property shall be paid from the proceeds of the sale of the Ann Arbor Property after surrender to Michigan Commerce as set forth in this Plan.

2.2.3   To the extent that any taxing authority has any valid Lien on any of the Property, such Lien shall remain in full force and effect until such time as the value of the Lien is determined.  Absent agreement by the parties, the value of any lien shall be determined by the Bankruptcy Court in accordance with section 506 of the Bankruptcy Code.  Upon payment of such amount, the Lien shall be released and terminated and such taxing authorities shall be, and hereby are, required to cooperate with the Debtor to execute all documents reasonably requested by the Debtor or the Reorganized Debtor to effectuate such release and termination.

2.2.4   The Reorganized Debtor shall have the right to continue or commence a challenge as to any Priority Tax Claim through the claims objection process set forth in Article XII of this Plan or through any appropriate adjudicative body with necessary jurisdiction, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax.  The right to challenge these claims shall include, without limitation, an objection to the assessment of the Debtor's real or personal property that may or may not have been made by the respective taxing authority.

2.3     **Professional Claims.**

2.3.1   **Final Fee Applications**.  All final requests for payment of Professional Claims must be Filed no later than sixty (60) days after the Effective Date.  After notice and a

hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Courts, the Allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court.

2.3.2 **Post-Confirmation Date Retention**. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date or to make any disclosures pursuant to Bankruptcy Rules 2014 and 2016 shall terminate, and the Reorganized Debtor shall employ and pay Professionals in the ordinary course of business.

2.4 **Other Administrative Claims**. All other requests for payment of an Administrative Claim (other than as set forth in section 2.3 of this Plan) must be Filed and served on counsel for the Debtor or Reorganized Debtor no later than 45 days after the Effective Date, except that any Administrative Claim not already Filed and required to have been Filed prior to a Bar Date pursuant to a Bar Date Order shall be disallowed automatically. Any request for payment of an Administrative Claim pursuant to this section 2.5 that is not timely Filed and served shall be disallowed automatically without the need for any objection from the Debtor or the Reorganized Debtor. After the Effective Date, the Debtor or the Reorganized Debtor may settle an Administrative Claim without further Bankruptcy Court approval. Unless the Debtor or the Reorganized Debtor object to an Administrative Claim within 60 days after the Administrative Claims Bar Date (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtor or the Reorganized Debtor objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

## ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTEREST NOT IMPAIRED UNDER THE PLAN AND THOSE IMPAIRED UNDER THE PLAN

The Plan divides Claims and Interests into four (4) Classes and treats them as follows:

3.1 Class I: This Class consists of the Michigan Commerce Debt.

3.1.1. The Michigan Commerce Debt is an allowed secured claim to the extent of the value of the Debtor's assets that secure the Michigan Commerce Debt. The Michigan Commerce Debt is secured by the Properties owned by the Debtor. According to Michigan Commerce, pursuant to an appraisal it conducted in November 2012, the appraised fair market value of the Properties is $1,800,000.

The Michigan Commerce Debt shall be satisfied as follows:

3.1.2 The Debtor will surrender the Ann Arbor Property, with an appraised fair market value of $800,000, to Michigan Commerce. Michigan Commerce will receive all the proceeds from any sale it conducts of the Ann Arbor Property, minus the amounts necessary to cover all property taxes and sales commission to a broker of Michigan Commerce's choosing.

11

3.1.3    The remainder of the Michigan Commerce Debt will be $750,00 (the "Principal") and shall be recapitalized as of the Effective Date to include the Principal plus a market rate of interest (the "Interest") (altogether the "Post-Confirmation Note").    The Post-Confirmation Note will be amortized over 20 years.    The Debtor shall make equal monthly payments for a period of 84 months.    Any remaining balance of the Michigan Commerce Debt shall be immediately due and owing at that time.

3.1.4    Michigan Commerce shall retain a lien on the Saline Property and the Dexter Property post-Confirmation, securing the remaining debt owed to Michigan Commerce.

3.1.5    This Class shall be Impaired.

3.2    Class II:        This Class consists of Corrigan Oil's Allowed General Unsecured Claim.

3.2.1    Pursuant to the filed and scheduled proofs of claim, Corrigan Oil holds an unsecured claim of $371,973.90.

3.2.2    Neither pre-Confirmation nor post-Confirmation interest on Allowed Class II Claims shall be paid.

3.2.3    Holders of Class II Claims will be paid $3,500 per month until paid in full. Monthly payments will commence in the month following the Confirmation Date.

3.2.4    This Class shall be Impaired.

3.3    Class III:        This Class consists of the Holders of All Other Unsecured Claims

3.3.1    Neither pre-Confirmation nor post-Confirmation interest on Allowed Class II Claims shall be paid.

3.3.2    Holders of Allowed General Unsecured Claims will be paid in full over a period not to exceed 60 months pursuant to equal monthly installment payments.    Monthly payments will commence in the month following the Confirmation Date.

3.3.3    This Class shall be Impaired.

3.4    Class IV:        This Class consists of the Holders of All Equity Interests

3.4.1    As of the Petition Date, John Cueter was the 100% equity owner of the Debtor.

3.4.2    Pursuant to the Plan, John Cueter's 100% equity interest in the Debtor is cancelled.

12

3.4.3   This Class shall be Impaired and is deemed to have rejected the Plan.

3.4.4   On the Effective Date and pursuant to the Plan, John Cueter will contribute "new value" and will acquire a 100% equity interest in the Reorganized Debtor.

## ARTICLE IV

## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1   **Assumption of Liability, Funding and Financing**:

4.1.1   The Reorganized Debtor shall be responsible for satisfying all of the Allowed Claims in accordance with the terms and provisions of the Plan.

4.1.2   The Debtor reasonably believes that future operations will enable the Reorganized Debtor to satisfy its obligations under the Plan. Other sources of cash may be explored and utilized by the Reorganized Debtor to the extent that such infusions are necessary to meet the obligations of the Plan.

4.1.3   Upon satisfaction of all obligations to any Claim Holder pursuant to the provisions of Articles II and/or III of this Plan, such Claim shall be satisfied in full and the Reorganized Debtor shall have no further obligation to such Claim Holder under this Plan, and such Claim Holder shall have no further or continued rights or standing to sue under this Plan.

4.1.4   Upon satisfaction of all obligations to all Claim Holders pursuant to the provisions of Articles II and/or III of this Plan, the Reorganized Debtor shall no longer be bound by the provisions of this Plan and shall be entitled to conduct its business without Bankruptcy Court supervision under applicable non-bankruptcy law. Nothing in this section 4.1 shall be construed as waiving or limiting the Reorganized Debtor's rights and interests under this Plan, to enforce those rights and interests though the Bankruptcy Court, to bring motions or pursue Causes of Action in the Bankruptcy Court, or to petition the Bankruptcy Court for the redress of any grievances.

4.2   **Professional Fees**:   Any services performed or expenses incurred by any Professional on behalf of the Debtor, or the Reorganized Debtor with respect to the Chapter 11 Case after the Confirmation Date, shall be Administrative Claims, shall be paid by the Debtor and Reorganized Debtor, and shall not be subject to the prior review and approval of the Bankruptcy Court. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Confirmation Date, no Professional shall be required to disclose payments from the Debtor or the Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of the Debtor and the Reorganized Debtor arising after the Confirmation Date shall be billed directly to the Reorganized Debtor and the Bankruptcy Court shall only review that portion to which the Reorganized Debtor objects. The Reorganized Debtor shall pay the portion not objected to in accordance with the terms of the invoice.

13

4.3 **Corporate Action**: Each of the matters provided for in this Plan involving the corporate structure of the Reorganized Debtor, corporate action to be taken or required of the Debtor or the Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred, approved, authorized, and shall be effective as provided under this Plan without the requirement of any further action of any kind by shareholders, directors, officers, or board of the Debtor or the Reorganized Debtor.

4.4 **Effectuating Documents**: The managing member of the Debtor and the Reorganized Debtor shall be and hereby is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary or appropriate on behalf of the Debtor or Reorganized Debtor to effectuate and further evidence the terms and conditions of this Plan without further notice to or order, action or approval of the Debtor's board or the Bankruptcy Court.

4.5 **Exemption from Certain Transfer Taxes and Recording Fees**: Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any other Person pursuant to, in contemplation of, or in connection with this Plan, including the transfer, assignment or sale of real and personal property, the creation transfer assignment or recording of any securities, title documents, bills of sale, leases or subleases, mortgages, Security interests and other Liens and instruments, shall not be subject to any stamp taxes and any other similar tax or governmental assessment to the fullest extent contemplated by section 1146 of the Bankruptcy Code. The Confirmation Order shall direct the appropriate state or local government officials or agents to forego the collection of any tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

4.6 **Preservation of Rights of Action**:

4.6.1 **Vesting of Causes of Action**: In accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action of the Debtor and Debtor's Estates shall be transferred to the Reorganized Debtor and the Reorganized Debtor shall retain and may (but is not required to) enforce all rights to commence, pursue, compromise and collect, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, Avoidance Claims and any actions specifically listed in the Disclosure Statement.

4.6.2 **All Causes of Action are Specifically Reserved, whether or not specifically listed in the Plan or Disclosure Statement**: Unless any Causes of Action against a person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Reorganized Debtor specifically reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, res judicata, estoppels (judicial, equitable or otherwise) or laches shall apply to any of the Causes of Action upon, after or as a consequence of the Confirmation, entry of the Confirmation Order, the Effective Date or Consummation of the Plan. For avoidance of doubt, the Debtor expressly waives all claims and counterclaims, if any, against Michigan Commerce pursuant to Article 3.1.1 of this Plan. The Debtor and Reorganized Debtor hold or potentially may hold claims or causes of action against, among others, each

14

Claim Holder and every Person that has been identified in the Debtor's Schedules as having received a payment or distribution from the Debtor. The Debtor specifically reserves the Causes of Action identified on **Exhibit A**.

       4.6.3  **Preservation of Defensive Use of Causes of Action:**  Whether or not any Cause of Action is pursued or abandoned, the Debtor and the Reorganized Debtor reserve their rights to use any Cause of Action defensively, including for the purposes of asserting a setoff or recoupment, or to object to all or part of any claim pursuant to section 502(d) of the Bankruptcy Code or otherwise. For avoidance of doubt, the Debtor expressly waives all defenses and objections to the Michigan Commerce Debt pursuant to Article 3.1.1 of this Plan.

### ARTICLE V

### EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

       5.1  **Discharge of Indebtedness:**  Except as provided in this Plan, Confirmation shall act as a merger, relinquishment and full satisfaction of any and all Claims that Creditors have, or may have, against the Debtor and the Reorganized Debtor as provided in the treatment of the Creditors in Articles II and III. The forgoing notwithstanding, this paragraph shall not affect the rights of any taxing authority against any other entity or person who may be liable or responsible for the taxes of the Reorganized Debtor.

       5.2  **Subordinated Claims.**  The allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and confirm the relative priority and rights of the Claims and Interest in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify (or request that the Bankruptcy Court reclassify) any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

       5.3  **Releases by Holders of Claims and Interests.**  Except as otherwise specifically provided in the Plan on or after the Effective Date, Holders of Claims and Interests (a) voting to accept the Plan or (b) abstaining from voting on the Plan and electing not to opt out of the release contained in this section 5.4, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtor, the Reorganized Debtor and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person would have been entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements,

15

instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of the Debtor, the Reorganized Debtor, or a Released Party that constitutes failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Debtor, the Reorganized Debtor, or the Released Parties reasonably believe to be in the best interest of the Debtor (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence; provided, however, that this section 5.4 shall not release any Released Party from Cause of Action held by a Governmental Unit existing as of the Effective Date based on any criminal laws of the United States or any domestic state, city or municipality.

5.4     **Injunction.**

5.4.1     **Injunction as to Actions Against the Reorganized Debtor and the Reorganized Debtor's Property:** Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold Claims or Interests that have been discharged or terminated pursuant to the terms of the Plan, including, without limitation, this <u>Article V</u>, are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, or their property on account of any such discharged Claims, debts, liabilities, or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is consistent, with the provisions of this Plan.

5.5     **Protections against Discriminatory Treatment.** Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or other Person with whom such Reorganized Debtor has been associated, solely because the Debtor has been a Debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

5.6     **Setoffs.** Except as otherwise expressly provided for in the Plan, the Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights and Causes of Action of any nature that the Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim (or against the predecessor in interest to Holder to the extent that the Holder takes such Allowed Claim subject to setoffs and defenses

that may be asserted against the predecessor in interest), to the extent such Claims, rights, or Causes of Action against such Holder have not have been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtor of any Claims, rights, setoff rights and Causes of Action that such Reorganized Debtor may possess against such Holder. The Reorganized Debtor shall not be required to make any distributions to the Holder of any Allowed Claim to the extent that the Reorganized Debtor asserts setoff rights against such Holder until the next Distribution Date after entry of a Final Order resolving such setoff rights. In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

5.7     **Recoupment.**  In no event shall any Holder of a Claim or Interest be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

5.8     **Release of Liens.**  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Articles II and III of the Plan, all mortgages, deeds of trust, Liens, pledges, or other Security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other Security interests shall revert to the Reorganized Debtor and its successors and assigns.

# ARTICLE VI

# PROVISIONS GOVERNING DISTRIBUTION

6.1     **Distributions on Claims Allowed as of the Effective Date.**  Except as otherwise provided for herein, as agreed by the relevant parties, or ordered by the Bankruptcy Court, distributions on account of Claims Allowed on or before the Effective Date under this Plan shall commence on the first Distribution Date; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice.

6.2     **No Interest On Disputed Claims.**  Unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, interest shall not

17

accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

6.3     **Delivery of Distributions in General.**  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims shall be made by the Reorganized Debtor (a) at the addresses set forth on the Proofs of Claim Filed by such Holders of Claims or Interests (or at the last known addresses of such Holders of Claims or Interests if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change in address), (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtor has not received a written notice of a change of address, or (d) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the matter set forth in the Plan.  The Debtor and the Reorganized Debtor, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

6.4     **Undeliverable Distributions.**  If any distribution to a Holder of a Claim or Interest is returned as undeliverable, no further distributions to such Holder of such Claim or Interest shall be made unless and until the Reorganized Debtor is notified of the then-current address of such Holder of the Claim or Interest, at which time all missed distributions shall be made to such Holder of the Claim or Interest without interest.  Amounts in respect of undeliverable distribution shall be returned to the Reorganized Debtor until such distributions are claimed.  No later than ninety (90) days after the first Distribution Date, the Reorganized Debtor shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions.  This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Debtor's Chapter 11 Case stays open.  Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim. All claims for undeliverable distributions must be made on or before the later to occur of (i) the first anniversary of the Effective Date or (ii) six months after such Holder's Claim or Interest becomes an Allowed Claim, after which date all such Allowed Claims shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtor free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary.

6.5     **Fractional Payments.**  Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required.  Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars.

6.6     **Failure to Present Checks.**  Checks issued by the Reorganized Debtor on account of allowed Claims shall be null and void if not negotiated within 120 days after the issuance of such check.  In an effort to ensure that all Holders of Allowed Claims receive their

allocated distributions, no later than 120 days after the issuance of such checks, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Debtor's Chapter 11 Case stays open. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and expunged and be discharged and forever barred, stopped, and enjoined from asserting any such Claim against the Reorganized Debtor or its property. In such Case, any Cash held for payment on account of such Claims shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

## ARTICLE VII

## MODIFICATION OF THE PLAN

7.1 **Modification of the Plan.** Except as otherwise provided in this Plan, the Debtor may, from time to time, propose amendments or modifications to this Plan prior to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in the Plan, the Debtor expressly reserves its right to revoke or withdraw, or to alter, amend or modify materially the Plan with respect to such Debtor, one or more times, after the Confirmation Date. After the Confirmation Date, the Reorganized Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan.

7.2 **Effect of Confirmation on Modifications.** Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

7.3 **Revocation or Withdrawal of the Plan.** The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and may document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of such Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Person.

# ARTICLE VIII

## JURISDICTION OF THE COURT

8.1     **Jurisdiction.**     Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction to:

8.1.1     The classification of the Claim of any Creditor and the re-examination of Claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors.  The failure by the Debtor or the Reorganized Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine the Claim in whole or in part.  Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor shall not in any way be deemed to be a waiver of any right to object to or re-examine the Clam or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

8.1.2     The determination of all questions and disputes regarding title to the assets of the estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or the Reorganized Debtor or any other party.

8.1.3     The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

8.1.4     The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided as in Article VI of the Plan.

8.1.5     The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

8.1.6     The entry of any order, including injunctions, necessary to enforce the title, rights and powers of Debtor, the Reorganized Debtor, or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, which would assist the Reorganized Debtor to accomplish its obligations under the Plan.

8.1.7     Subject to section 4.2, above, the review and approval of all Professional Fee applications for services rendered prior to the Confirmation Date and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date, to the extent that the Debtor or the Reorganized Debtor dispute all or a portion thereof.

8.1.8     The assumption or rejection of executory contracts under Article XI of this Plan.

8.1.9   The right to pursue any Avoidance Actions.

8.1.10  The entry of an order determining the validity of any Lien.

8.1.11  The entry of an order concluding and terminating this Chapter 11 Case.

## ARTICLE IX

## TITLE TO PROPERTY

9.1   **Revesting of Assets.**  Except as otherwise explicitly provided for in this Plan, on the Effective Date, all property comprising the Estate (including all Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, right, and Interests of Creditors and equity Security Holders.  As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

## ARTICLE X

## UNITED STATES TRUSTEE FEES & REGULATORY COMPLIANCE

10.1  **Payment of U.S. Trustee Fees.**  The Reorganized Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) and shall provide the United States Trustee with an appropriate report indicating the cash disbursements for the relevant period until such time as the Chapter 11 Case is administratively closed.

## ARTICLE XI

## EXECUTORY CONTRACTS

11.1  **Assumption of Executory Contracts.**  Unless addressed in Article III of this Plan or otherwise assumed or rejected by Final Order of the Bankruptcy Court, all executory contracts of the Debtor which are either: (i) not expressly rejected or (ii) not the subject of a pending application to reject as of thirty (30) days after the Confirmation Date, shall be deemed rejected.

11.2  **Rejection Claims.**  Any Creditor who has a Claim as a result of the rejection of a contract shall have thirty (30) days after receipt of the notice to file a Proof of claim; failing to do so shall result in such Claim to be disallowed in its entirety.  The notice shall contain a provision informing any potential Creditor of this requirement and shall be served on such potential Creditor(s).

21

11.3    **Objections to Rejection Claims.**  The Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in accordance with Article XII.

## ARTICLE XII

## OBJECTIONS TO CLAIMS

12.1    **Timing of Objections.**  The Debtor and/or the Reorganized Debtor may object to the allowance of any claim, or the extent, validity and enforcement of any Security interest, whether listed on the Schedules filed by a Debtor or filed by any Creditor, on or before the later of (a) sixty (60) days from the date of filing of any Proof of Claim or (b) six (6) months after the Effective Date.

12.2    **Extent of Objections.**  As part of the objection process set forth in paragraph 12.1 above, and without limiting same, the Debtor and the Reorganized Debtor shall have the right to object to the claim of any Lien.

12.3    **Resolution of Claim Objections.**  For Claims equal to or less than $100,000.00, the Debtor or Reorganized Debtor as applicable may settle such claim objection without Bankruptcy Court approval.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    **Immediate Binding Effect.**  Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims Interests (irrespective of whether any such Holders of Claims or Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan, or is deemed to accept or reject the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan or herein, such Person acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

13.2    **Additional Documents.**  On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.3    **Reservation of Rights.**  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any

action by the Debtor with respect to the Plan or the Disclosure Statement shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

13.4 **Successors and Assigns.** The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Person.

13.5 **Service of Documents.**

13.5.1 After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or Reorganized Debtor shall be sent by overnight mail, postage prepaid to:

Harrington Dragich PLLC
Counsel for Debtor
21043 Mack Avenue
Grosse Pointe Woods, MI 48236

13.5.2 After the Effective Date, the Reorganized Debtor has authority to send a notice to Persons that continue to receive documents pursuant to Bankruptcy Rule 2002, that each such Person must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtor is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have Filed such renewed requests.

13.6 **Entire Agreement.** Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.7 **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) unless otherwise specifically stated, the laws of the State of Michigan, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

13.8 **Nonseverability of Plan Provisions.** If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term of provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or

23

interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

13.9 **Closing of Chapter 11 Case.** The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court, all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

13.10 **Waiver or Estoppel.** Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor, or their counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

13.11 **Conflicts and Interpretation of the Plan.** Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, or any other order (other than the Confirmation Order) referenced in the Plan (or any Exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent a term in the Plan is ambiguous, the Reorganized Debtor is authorized to interpret such term in their sole discretion.

13.12 **Termination of Liens and Encumbrances.** The Debtor, the Reorganized Debtor, and all parties-in interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and the conditions of this Plan. This shall include without limitation any execution by the Debtor or the Reorganized Debtor of Uniform Commercial Code financing statements and the execution by Creditors of any Uniform Commercial Code termination and mortgage releases and termination. The Reorganized Debtor is expressly authorized to file any termination statement to release a Lien which is either discharged or satisfied as a result of this Plan or any payments made in accordance with the Plan.

13.13 **Transfer Tax.** The sale of any property by any Debtor to accomplish a payment to satisfy an obligation set forth in this Plan shall be exempt from transfer tax pursuant to section 1146 of the Bankruptcy Code.

13.14 **Limitations on Operations.** When the Debtor or the Reorganized Debtor has made all payments and distributions required under this Plan, all restrictions, negative covenants, and other limitations on the Debtor's operations provided herein or in the Confirmation Order shall terminate.

13.15 **Causes of Action; Standing**. Except as otherwise provided in this Plan, the Reorganized Debtor shall have the right to commence, continue, amend or compromise all Causes of Action available to any Debtor, the Estate or the debtor-in-possession, including without limitation all Avoidance Claims whether or not those Causes of Action or Avoidance Claims were the subject of a suit as of the Confirmation Date.

## DISCLOSURE STATEMENT

## II.     DESCRIPTION OF THE DEBTOR

### A.     The Debtor-In-Possession

The Debtor is a limited liability company organized in 2007 under the laws of the State of Michigan that owns a three separate properties located at 4000 Washtenaw Ave., Ann Arbor, Michigan ("Ann Arbor Property"); 6135-6139 Ann Arbor Saline Road, Saline, Michigan ("Saline Property"); and 6100 Dexter-Pinckney Road, Dexter, Michigan ("Dexter Property") (collectively, the "Properties").  The Debtor is owned by John Cueter ("Mr. Cueter"), who is listed on the Debtor's chapter 11 petition or related documents.  The Debtor leases and collects rents from its tenants at the Ann Arbor Property.

On February 27, 2013 (the "Petition Date"), the Debtor filed a Voluntary Petition under Chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 13-43573.  This Chapter 11 Case was assigned to the Honorable Phillip J. Shefferly.  Upon filing the petition for Chapter 11 reorganization, the Debtor became a "Debtor-in-Possession" pursuant to the Bankruptcy Code.

### B.     The Debtor's Principal

#### 1.     Background

Doug Annas ("Mr. Annas") is the authorized agent of the Debtor and manages the Properties.  As a result of Mr. Annas's tenure with the Debtor, his review of documents, and discussions with others, he is familiar with the Debtor's day-to-day operations, business affairs, and books and records.

#### 2.     Compensation

The Debtor has six employees.  The Debtor's employees are paid an hourly wage.

#### 3.     Relationship to the Debtor

The Properties are managed by Mr. Annas, a resident of Grosse Pointe Woods, Michigan.   Mr. Annas is generally responsible for the daily management, operation, maintenance, leasing, supervision and repair of the Properties, subject to the Debtor's direction.

Mr. Annas have been retained by the Debtor to manage the Debtor's operations and financial affairs.

### C.     The Debtor's Business and the Chapter 11 Filing

The Debtor's sole business consists of its operation of the Properties. The Ann Arbor Property, trade name "Sunoco," includes a gas station, convenience store, Oil Change, and Car Wash. The Saline Property, trade name "Lodi Foodmart," includes a gas station and a convenience store. The Dexter Property, trade name "Huron Creek Party Store," also includes a gas station and a convenience store. All of the convenience stores sell beer, wine, liquor, and lottery. All of the Properties are occupied and in operation.

On September 27, 2007, MRJP and Cueter entered into a secured commercial financing arrangement with Michigan Commerce, for which MRJP is the primary borrower ("Note 1"). MRJP and Mr. Cueter entered into Note 2 on the same day ("Note 2") (collectively, the "Notes"). Both Notes have an interest rate of 8.25%. The Notes are cross collateralized through the Security Agreements and Mortgages (defined below). MRJP and Mr. Cueter secured repayment of their commercial debt to Michigan Commerce by executing two security agreements. The first security agreement granted to Michigan Commerce a lien and blanket security interest in all of MRJP's business assets ("Security Agreement 1"). The second security agreement executed by MRJP granted the Michigan Commerce a lien with respect to Citizens Bank Assignment of Promissory Note, Collateral and Loan Documents ("Security Agreement 2") (collectively, the "Security Agreements"). Both of the Security Agreements were executed on September 27, 2007. The business assets and personal property, identified in the Security Agreements, are collectively referred to as "Business Asset Collateral."

Michigan Commerce asserts that it has Mortgages granting the Michigan Commerce a lien on the Ann Arbor property and Saline Property ("Mortgage 1"), on property owned by Mr. Cueter located at 7942 Hallie Drive, Ypsilanti, Michigan ("Cueter Mortgage"), and on the Dexter Property ("Mortgage 2") (collectively, the "Mortgages"). The real estate and fixtures are collectively referred to as "Real Estate Collateral." Further, Michigan Commerce has a first priority lien on rents from MRJP's real property pursuant to (i) Assignments of Rents dated September 27, 2007, from the Ann Arbor Property and Saline Property ("Assignment of Rents 1") and (ii) Assignments of Rents dated July 23, 2004, from the Dexter Property ("Assignment of Rents 2") (collectively "Assignments of Rents" and/or "Real Estate Collateral"). Further, on September 27, 2007, Mr. Cueter executed a guaranty to pay all existing, current, and future indebtedness of MRJP to Michigan Commerce (the "Guaranty").

In September 2012, the Notes matured. The Bank demanded payment in full. On or about February 12, 2013, Michigan Commerce filed a motion for the appointment of a receiver over the Debtor's business.

Prior to the Petition Date, the Debtor made repeated and good faith attempts to negotiate an arrangement with Michigan Commerce to permit the continued operations of the Debtor, but was unsuccessful. The parties' failed to negotiate a mutually acceptable arrangement which would allow the Debtor to operate in its ordinary course of business and forced the Debtor to

26

seek Chapter 11 bankruptcy protection in order to restructure their debt and to continue operations.

## III.    POST-PETITION EVENTS OF SIGNIFICANCE

### A.    Post-Petition Transfers by the Debtor Outside of the Ordinary Course of Business

None.

### B.    Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection

On February 27, 2013, the Debtor filed a First Day Motion for Entry of an Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection [Docket No. 6] (the "Cash Collateral Motion").  By this Motion, the Debtor sought an order pursuant to sections 105(a), 361 and 363 of the Bankruptcy Code: (a) authorizing it to use cash collateral on an interim basis, (b) granting and affirming, to the extent necessary, adequate protection to Michigan Commerce, and (c) scheduling a final hearing on the Cash Collateral Motion

On March 1, 2013, the Court entered an order granted an Interim Order the Debtor's Cash Collateral Motion [Docket No. 14] (the "Interim Order").  Pursuant to the Interim Order, the Debtor was authorized to use cash collateral for a period of 30 days from entry of the Interim Order in the amounts and the purposes outlined in the budget attached to the Cash Collateral Motion.  As adequate protection for any diminution in value of the collateral securing Michigan Commerce's claims and for the Debtor's use of cash collateral, Michigan Commerce was granted a lien in post-petition assets generated from the Properties.  On March 22, 2013, the Interim Order became a final order pursuant to the Court's Final Order Authorizing Use of Cash Collateral and Providing Adequate Protection [Docket No. 36] (the "Final Cash Collateral Order").

Pursuant to the Final Cash Collateral Order, the terms of that order could be extended without further order of the Bankruptcy Court upon the written agreement of the Debtor and Michigan Commerce with respect to a new budget.  During the course of this case, the Debtor and Michigan Commerce have agreed on budgets for each month through the filing of this Plan.

### C.    Pending Litigation

There is no pending or contemplated litigation involving the Debtor.

## IV.    ASSETS AND LIABILITIES

### A.    Liquidation Analysis

The Debtor's liquidation analysis (the "Liquidation Analysis") is attached as **Exhibit B**.

**B.**      **Risks, Conditions and Assumptions in Liquidation Analysis**

According to Michigan Commerce's appraisals, conducted in November 2012, the appraised fair market value of the Properties was $1,800,000. However, the sale of commercial properties in Metropolitan Detroit is extremely difficult due to the current economic conditions of the region and the lack of opportunities to secure financing. Further, the local real estate market is distressed as many companies have reduced their real estate needs as companies continue to downsize the size of their workforce. Based upon the attached Liquidation Analysis, the provisions of this Plan, and the familiarity of the Debtor with the Properties Property and the issues related to soliciting a purchaser of the Properties, the Debtor believes that a liquidation of the assets would result in a smaller distribution to all creditors, as compared to the proposed treatment set forth in the Plan.

**C.**      **Causes of Action**

The Debtor is currently unaware of any potential claims and/or causes of action, including claims against insiders and avoidance actions, except as disclosed herein or in the Plan.

**D.**      **Priority and Administrative Expenses**

Priority Tax Claims are set forth in the Debtor's Schedules.

As of the Petition Date, Corrigan Oil asserted an administrative claim in favor of Corrigan Oil pursuant to section 503(b)(9) of the Bankruptcy Code in the amount of $31,666. Since April 8, 2013, the Debtor has been making weekly payments to Corrigan Oil in the amount of $879.61 and will continue to do so post-confirmation until Corrigan Oil's administrative expense is paid in full.

**E.**      **Secured and Unsecured Claims**

Pursuant to the filed and scheduled proofs of claim, Michigan Commerce has an allowed secured Claim as set forth in Article 3.1.1 of the Plan. In addition, there are asserted unsecured claims valued at $376,669.63 held by Corrigan Oil, the Michigan Department of Treasury and GE Capital Retail Bank and other creditors which are subject to further review by the Debtor.

**F.**      **Guaranteed Debt**

The Michigan Commerce Debt is guaranteed by John Cueter. The Properties secure the guarantee. Pursuant to an appraisal conducted by Michigan Commerce in November 2012, the appraised fair market value of Properties was $1,800,000. John Cueter personally guaranteed all of the Michigan Commerce Debt.

## V.   IMPLEMENTATION OF THE PLAN

### A.   Summary of Financial Information

The following information has been compiled from the records of the Debtor and is true and accurate to the best of the Debtor's knowledge, information, and belief.

1.   For a summary of financial performance for three years pre-petition, see **Exhibit C.**

2.   For a summary of financial performance post-petition, see **Exhibit D**.

3.   Accompanying this Disclosure Statement is an income and expense report compiled by the Debtor which covers the time period in which the Debtor proposes to effectuate payments under the Plan attached as **Exhibit E**.  This income and expense report indicates that the Debtor will generate a positive cash flow going forward sufficient to meet all of its obligations to creditors under the Plan.  The income and expense report for the proposed Plan period demonstrate payments required to be made under the Plan and how the distributions to creditors will affect the Debtor's cash flow.  A summary of payments required to be made under the plan is as follows:

### Groups Under Plan

For the purposes of approval and implementation of this Plan and the resultant reorganization of the Debtor, Administrative Claims and Priority Claims shall be paid on account of their Allowed Claims in accordance with the provisions set forth below:

### Group 1:  Administrative Expense Claims

This group consists of Allowed Administrative Claims.  The potential administrative claims at the time of confirmation will be in favor of Harrington Dragich PLLC ("Harrington Dragich"), attorneys for the Debtor, Taylor & Morgan certified public accountant, any other Professionals retained by the Debtor and quarterly fees for the United States Trustee. Administrative claims of Professionals and other parties are current through the filing of the Plan and have been paid pursuant to the Cash Collateral Budget submitted by the Debtor and approved by Michigan Commerce.  To the extent Professionals have been paid pursuant to the Cash Collateral Budget, all such fees and expenses are subject to the filing and approval of final fee applications by the Bankruptcy Court.

Subject to the provisions of this Plan, as soon as reasonably practicable after the date when an Administrative Claim becomes an Allowed Administrative Claim or the date when an Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the Holder of such Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such

Allowed Administrative Claim or such other treatment that the Debtor (or the Reorganized Debtor) and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

**Group 2:**     **Priority Tax Claims.**

Based upon the scheduled claims, this group consists of Priority Tax Claims that are entitled to priority under 11 U.S.C. § 507(a)(8), including a claim in the amount of $114,800.50 related to property taxes asserted by the Washtenaw County Treasurer; $7,983.89 related to personal property taxed asserted by Lodi Township; $8,273.03 related to sales tax asserted by the State of Michigan; and $718.95 related to personal property taxes asserted by Dexter Township. All such Priority Tax Claims remain subject to review of the Debtor pursuant to this Plan.

Allowed Priority Tax Claims will be paid in equal quarterly payments until such claims are paid in full. Any taxes relating to the Ann Arbor Property shall be paid from the proceeds of the Sale of the Ann Arbor Property after surrender to Michigan Commerce as set forth in this Plan.

To the extent that any taxing authority has any valid Lien on any of the Property, such Lien shall remain in full force and effect until such time as the value of the Lien is determined. Absent agreement by the parties, the value of any lien shall be determined by the Bankruptcy Court in accordance with section 506 of the Bankruptcy Code. Upon payment of such amount, the Lien shall be released and terminated and such taxing authorities shall be, and hereby are, required to cooperate with the Debtor to execute all documents reasonably requested by the Debtor or the Reorganized Debtor to effectuate such release and termination.

The Reorganized Debtor shall have the right to continue or commence a challenge as to any Priority Tax Claim through the claims objection process set forth in Article XII of this Plan or through any appropriate adjudicative body with necessary jurisdiction, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims shall include, without limitation, an objection to the assessment of the Debtor's real or personal property that may or may not have been made by the respective taxing authority.

**Claims and Interests Under Plan**

The Plan divides Claims and Interests into four (4) Classes and treats them as follows:

Class I:     This Class consists of the Michigan Commerce Debt.

The Michigan Commerce Debt is an allowed secured claim to the extent of the value of the Debtor's assets that secure the Michigan Commerce Debt. The Michigan Commerce Debt is secured by the Properties owned by the Debtor. According to Michigan Commerce, pursuant to an appraisal it conducted in November 2012, the appraised fair market value of the Properties is $1,800,000.

The Michigan Commerce Debt shall be satisfied as follows:

The Debtor will surrender the Ann Arbor Property, with an appraised fair market value of $800,000, to Michigan Commerce. Michigan Commerce will receive all the proceeds from any sale it conducts of the Ann Arbor Property, minus the amounts necessary to cover all property taxes and sales commission to a broker of Michigan Commerce's choosing.

The remainder of the Michigan Commerce Debt will be $750,000 (the "Principal") and shall be recapitalized as of the Effective Date to include the Principal plus a market rate of interest (the "Interest") (altogether the "Post-Confirmation Note"). The Post-Confirmation Note will be amortized over 20 years. The Debtor shall make equal monthly payments for a period of 84 months. Any remaining balance of the Michigan Commerce Debt shall be immediately due and owing at that time.

Michigan Commerce shall retain a lien on the Saline Property and the Dexter Property post-Confirmation, securing the remaining debt owed to Michigan Commerce.

This Class shall be Impaired.

Class II:        This Class consists of Corrigan Oil's Allowed General Unsecured Claim.

Pursuant to the filed and scheduled proofs of claim, Corrigan Oil holds an unsecured claim of $371,973.90.

Neither pre-Confirmation nor post-Confirmation interest on Allowed Class II Claims shall be paid.

Holders of Class II Claims will be paid $3,500 per month until paid in full. Monthly payments will commence in the month following the Confirmation Date.

This Class shall be Impaired.

Class III:        This Class consists of the Holders of All Other Unsecured Claims

Neither pre-Confirmation nor post-Confirmation interest on Allowed Class II Claims shall be paid.

Holders of Allowed General Unsecured Claims will be paid in full over a period not to exceed 60 months pursuant to equal monthly installment payments. Monthly payments will commence in the month following the Confirmation Date.

This Class shall be Impaired.

Class IV:        This Class consists of the Holders of All Equity Interests

As of the Petition Date, John Cueter was the 100% equity owner of the Debtor.

Pursuant to the Plan, John Cueter's 100% equity interest in the Debtor is cancelled.

This Class shall be Impaired and shall be deemed to reject the Plan.

On the Effective Date and pursuant to the Plan, John Cueter will contribute "new value" and will acquire a 100% equity interest in the Reorganized Debtor.

## B.   Post-Petition Management and Compensation

The Debtor proposes to continue its operations at the Dexter Property and Saline Property with the same management structure as was in place pre-petition.

## C.   Tax Ramifications

The Debtor believes that the forgiveness of indebtedness which may result from a discharge granted by the confirmation of the Plan will not result in any significant adverse tax consequence to the Debtor.

## VI.   LEGAL REQUIREMENTS

A.   *Voting procedures*

*Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests, which are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the plan.*

*Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.*

*Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.*

*Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the Court.*

*Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.*

*A ballot that is not received by the deadline will not be counted.*

*If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the debtor's attorney.*

B.      Acceptance

*The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.*

C.      Confirmation

*11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan.   These conditions are too numerous and detailed to be fully explained here.  Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.*

*Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:*

1.      *Each class of impaired creditors and interests must accept the plan, as described in paragraph VI.B., above.*

2.      *Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.*

D.      Modification

*The debtor reserves the right to modify or withdraw the plan at any time before confirmation.*

E.      Effect of confirmation

*If the plan is confirmed by the Court:*

1.      *Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.*

33

2.      Except as provided in the plan and in 11 U.S.C. § 1141(d):

    (a)      In the case of a <u>corporation</u> that is reorganizing and continuing business:

        (1)      All claims and interests will be discharged.

        (2)      Creditors and shareholders will be prohibited from asserting their claims against or interests in the debtor or its assets.

    (b)      In the case of a <u>corporation</u> that is liquidating and not continuing its business:

        (1)      Claims and interests will not be discharged.

        (2)      Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

    (c)      In the case of an individual or husband and wife:

        (1)      Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 1141(d).

        (2)      Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 1141(d).

Debtor is a limited liability company that is reorganizing and continuing in business and therefore Paragraph VI(E)(2)(a) applies in this case.

Dated:  July 16, 2013                    **DEBTOR**

                                          /s/ Douglas Annas
                                          MRJP, LLC

                                          Prepared by:

                                          **HARRINGTON DRAGICH PLLC**

                                          /s/ David G. Dragich
                                          David G. Dragich (P63234)
                                          Amanda C. Vintevoghel (P76567)
                                          21043 Mack Avenue
                                          Grosse Pointe Woods, MI, 48236
                                          (313) 886-4550 (Telephone)
                                          ddragich@harringtondragich.com
                                          avintevoghel@harringtondragich.com

                                          *Counsel to Debtor and Debtor-in-Possession, MRJP, LLC*

35